UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| _____ ) | |
| TWENTIETH CENTURY FOX FILM CORP., *et al.* ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | No. 1:14cv362 |
| ) | (LO / IDD) |
| MEGAUPLOAD LIMITED, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |
| _____) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT MEGAUPLOAD LTD.'S MOTION
FOR A STAY PENDING A PARALLEL CRIMINAL PROSECUTION**

Defendant Megaupload Limited ("Megaupload") filed a motion to extend the stay previously entered in this matter by an additional six months (Dkt. No. 48), to which Plaintiffs have responded (Dkt. No. 50).[1]  In their response, Plaintiffs state that they "do not generally oppose another six-month stay," but request that the stay be "qualified to permit Plaintiffs to subpoena [Cogent Communications, Inc.] for the ***relevant data*** in [Cogent's] possession in order to ***ensure its preservation*** in this case."  (Dkt. No. 50, *Response* at 2 (emphasis added).)  There are two fundamental flaws in Plaintiffs' analysis: (i) the failure to show "good cause" for expedited discovery or a pre-discovery preservation order; and (ii) the failure to make a factual showing regarding the nature and extent of Megaupload's data on the Cogent servers.  In any event, there are absolutely no grounds on which the Court should allow Plaintiffs to obtain Megaupload's data without Megaupload's prior review, as required by the Stored

---

[1]  An identical motion for extension of the stay was entered in the *Warner Music Action*, and an identical reply was filed by Plaintiffs in that case.  *Warner Music Group Corp. v. Megaupload, Ltd.*, No. 1:14cv374-LO/IDD (E.D. Va. filed Apr. 10, 2014) (ECF Nos. 45 & 47).  This reply will be incorporated by reference in the *Warner Music Action*.

Communications Act ("SCA"). The stay should be extended, and Plaintiffs' request for unfettered access to the data cached on the Cogent servers should be denied. However, if the Court deems it appropriate to take steps to preserve the data now in Cogent's possession, the parties should directed to meet with the Magistrate Judge to develop an appropriate plan to ensure that third-party privacy interests are protected, to protect the integrity of the data on Cogent servers, and to preserve that data for later use as evidence in this or other actions.

## I.      PLAINTIFFS HAVE NOT SHOWN "GOOD CAUSE" FOR EXPEDITED DISCOVERY OR FOR A PRE-DISCOVERY PRESERVATION ORDER.

Plaintiffs argue for expedited discovery or a pre-discovery preservation order, but fail to make the showing of good cause for either form of relief. Instead of ordering relief based on Plaintiffs' motion, the parties should be referred to the Magistrate Judge to work out a plan for preserving, reviewing, and accessing the data cached on the Cogent servers (*see* Section III below).

### A.      PLAINTIFFS FAIL TO MAKE THE SHOWING FOR EXPEDITED DISCOVERY

Claiming that they need only show "unusual circumstances," Plaintiffs argue that expedited discovery should be ordered. (Dkt. No. 50, *Response* at 4-6 & n.1.) That argument is based on Plaintiffs' misreading of the cited cases.

By rule, there is a moratorium on all discovery until the Rule 26(f) conference has occurred or a court order has been obtained. FED. R. CIV. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized by these rules, by stipulation, or by court order."). Therefore, a party "seeking expedited discovery in advance of the Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures." *E.g.*, *Qwest Communications Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).

Expedited discovery may be appropriate when there are threshold motions, such as for a preliminary injunction or challenging personal jurisdiction. ADV. COM. NOTES, 146 F.R.D. 501, 640 (1993). "Good cause" also may include the possibility that evidence will be lost or destroyed to the prejudice of one of the parties. *Cf. id.* (expedited discovery deposition may be ordered if witness is "about to leave the country"). But Plaintiffs fail to show that the Megaupload data on the Cogent servers is likely to be imminently lost or destroyed.

That omission is critical because courts generally find that expedited discovery is available only "when some unusual circumstances or conditions exist ***that would likely prejudice the party*** if they are required to wait the normal time" to initiate discovery. *Physicians Interactive v. Lathian Sys. Inc.*, No. 1:03-1193, 2003 U.S. Dist. LEXIS 22868, at *11-12 (E.D. Va. Dec. 5, 2003) (internal quotation marks and citations omitted) (emphasis added); *accord Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11cv345, 2011 WL 2634166, 1; 2011 U.S. Dist. LEXIS 73159, *3-4 (E.D. Va. July 1, 2011) ("Courts have found that immediate discovery 'should be granted when some unusual circumstances or conditions exist ***that would likely prejudice*** the party if he were required to wait the normal time.'") (emphasis added); *see also Religious Tech. Ctr. v. Lerma*, 897 F. Supp. 260 (E.D. Va. 1995) (denying expedited discovery after considering, *inter alia*, potential harm to requesting party). At bottom, then, most courts analyze whether plaintiff has "established … a sufficient possibility of threatened irreparable injury" in deciding whether there is "good cause" for expedited discovery. *In re 3Com Shareholders Litig.*, Civil Action No. 5067-CC, 2009 WL 5173804, at *1 (Del. Ch. Dec. 18, 2009). Thus, "unusual circumstances" are not enough; a showing of prejudice also is required.

As shown in Megaupload's motion, there is no imminent threat that the data on the Cogent servers will be lost to the prejudice of Plaintiffs.  Therefore, Plaintiffs have not—and cannot—show "good cause" for expedited discovery.

Moreover, courts must consider "the burden" on the defendants that may flow from expedited discovery requests.  *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2009).  Authorizing Plaintiffs to serve a subpoena on Cogent to obtain a complete set of the Megaupload data cached on those servers server triggers Megaupload's rights and statutory obligations as a cloud storage provider to conduct an expert and legal review—analyzing many terabytes of data—for user privacy protection under statutes like the SCA and "relevance" for discovery purposes prior to any disclosure to Plaintiffs. Moreover, under ordinary discovery procedures, Megaupload would be permitted to formulate objections, would employ its own eDiscovery vendor, and would conduct the necessary review, processing, and production of electronically "redacted" materials.  If the Court authorizes Plaintiffs to subpoena Cogent for all the cached data, Megaupload either will be burdened by the necessary data-review process prior to disclosure to Plaintiffs—which burden Plaintiffs fail to address at all—or will be precluded from exercising its rights or fulfilling its obligations as an cloud storage provider with respect to this data.

Therefore, Megaupload respectfully submits that authorizing expedited discovery is not warranted.  If any relief appears warranted, however, directing the parties to devise a plan for preservation would be the proper course of action (*see* Section III below).

## B.  GROUNDS FOR A "PRESERVATION ORDER" HAVE NOT BEEN SHOWN.

As an alternative to being given leave to serve a subpoena on Cogent, Plaintiffs contend that "the Court should appoint an independent and reputable third-party vendor of computer

forensics services to confirm the integrity of the data on the Cogent drives and to copy and preserve it for the benefit of the parties and the Court." (Dkt. No. 50, *Response* at 5-6.) No rule or case law is cited in support of Plaintiffs' request for that extraordinary arrangement, which would be, in effect, a "preservation order" issued under the Court's inherent authority.

In extraordinary circumstances, and prior to active discovery in a civil case, the Court has "inherent authority" to issue a "preservation order" that specific procedures be adopted to preserve specific evidence. *See The Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (2004) ("courts have held that they have the inherent power to order that evidence be preserved and have, for good cause, required that specific procedures be adopted to ensure such preservation"). When asked to exercise that inherent authority, however, the Court must act "with restraint and discretion," and must require that the party "seeking a preservation order demonstrate that it is necessary and not unduly burdensome." *Id*. at 137-38 (citations omitted). To meet this test, "the proponent ordinarily must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed—a burden often met by demonstrating that the [possessing] party has lost or destroyed evidence in the past or has inadequate retention procedures in place. More than that, the proponent must show that the particular steps to be adopted will be effective, but not overbroad—the court will neither lightly exercise its inherent power to protect evidence nor indulge in an exercise in futility." *Id*. at 138 (citations omitted). Plaintiffs fail to make the requisite showing under *Pueblo of Laguna* that such an order is "necessary and not unduly burdensome." Instead, Plaintiffs express mere speculative beliefs, fears, and discomfort. (Dkt. No. 50, *Response* at 5-6.) Simply arguing that having the Cogent data placed in the hands of a vendor would make them "more comfortable" is not sufficient.

Other courts state the requisite showing for a preservation order as "balancing test which considers the following three factors … : 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spacial and financial burdens created by ordering evidence preservation." *Capricorn Power Co. v. Siemens Westinghouse Power Co*., 220 F.R.D. 429, 433-34 (W.D. Pa. 2004). Under this test, as under the *Pueblo of Laguna* test, it is imperative that the movant show the imminent danger of the loss of evidence. No such showing is made here.

All that Plaintiffs offer is speculation and argument. That is not enough. Cogent is "one of the world's largest Internet Service Providers, delivering high quality Internet, Ethernet and Colocation services to over 53,100 Enterprise and NetCentric customers," and it "serves over 190 markets in 41 countries across its facilities-based, all-optical IP network."[2] There is simply no imminent risk that Cogent will lose or destroy this data.

Megaupload's counsel has conferred with Cogent, which has indicated a preference for providing the cached data to Megaupload's legal team because Megaupload was the cloud storage provider and the cached data is from Megaupload's users. Under the SCA, the only party that can access and review such data, and who is responsible to make the ultimate production decision, is Megaupload as the cloud storage provider. The SCA prohibits disclosure of user data to any third parties, like Plaintiffs, and is there no exception to that the prohibition for third

---

[2] *See* About Cogent at http://www.cogentco.com/en/about-cogent.

parties who might be deemed a "neutral"—disclosure to *any* third party is prohibited.   The introduction of a purported "neutral," moreover, can lead to myriad problems such as:  who is responsible for a hack or user data leak; what are the conditions for data access; and who is responsible for ongoing payments for preservation and related services.  Given the importance of the original server data—especially the portions that are considered caching data—as potentially exonerating evidence in the criminal case, and as relevant evidence in the several civil cases, things like non-destructive copying of the original server data, chain-of-custody, defense access and remedies, and original server access oversight by eDiscovery experts are indispensible.

Therefore, the Court should not merely appoint a "neutral" stakeholder as Plaintiffs request.  Instead, if the Court is inclined to take steps to preserve this data, Megaupload offers a more proportional and safer path forward in Section III below.

## II.   PLAINTIFFS FAIL TO SHOW THAT ACCESS TO THE MEGAUPLOAD DATA IS NECESSARY OR THAT THE ALL SUCH DATA CONSISTS OF "PUBLICLY ACCESSIBLE" CACHED FILES

Plaintiffs also have failed to make a factual showing regarding the nature and extent of the data in Cogent's possession; instead, Plaintiffs offer counsel's *speculative assertion* that the data will contain "only the most popular files" stored on the Megaupload servers, *implying* that those files will comprise only pirated copies of copyright-protected works and no private third-party data.  (Dkt. No. 50, *Response* at 2-3.)  Plaintiffs' assertions and characterizations of the data are based entirely on *hearsay*—that is, assertions made by the government in the summary of evidence filed in the *Criminal Action*.  The government's generalized assertions, in turn, are based on its "preliminary analysis" of the Cogent servers.  The government's hearsay assertions cannot be taken as hard facts.

Without actually examining the data, no one can confirm that the data includes only such "cached" data.  The Court should not rely on Plaintiffs' speculation because at least some of the

data may be private third-party data or Megaupload's proprietary data, the disclosure of which is protected. Thus, unless it is absolutely certain that none of the data is private third-party data or otherwise confidential or proprietary data (and it is not so certain), the data on the Cogent servers must be reviewed by Defendants *before* any of it is released to Plaintiffs.

Furthermore, based solely on counsel's argument, Plaintiff contends that otherwise private third-party data may be released to Plaintiffs because "[t]here can be little question that the Cogent servers were configured to rendered the stored data 'readily accessible to the general public' or, at the very least, that Megaupload's users consented to the disclosure of the data on those servers." (Dkt. No. 50, *Response* at 4 (emphasis added).) The Court should not accept counsel's sweeping argument as a substitute for a factual showing—the consequences of an unnecessary and improper disclosure of private third-party or otherwise protected data are too great, even if the Court accepts Plaintiff's unsupported assumption that the risk of an unnecessary and improper disclosure is small. Rather than engage in a speculative risk-analysis, there should be a factual analysis before any data is released to Plaintiffs. Indeed, even in the likely event that vast amounts of such server data end up being discoverable and unprotected, there is no way on the current record to confirm that *all* the data is discoverable and unprotected. Simply put, there is nothing in the record before the Court to support the reckless approach advocated by Plaintiffs of merely assuming that the data may be disclosed to third parties without any review.

Therefore, the Court should not allow Plaintiffs to serve a discovery subpoena at this time to obtain a forensically mirrored copy of a complete set of the Megaupload data on Cogent servers. That wholesale disclosure could violate federal statutes protecting private third-party

data and otherwise tread on Megaupload's rights to its own data.  Instead, the data must be reviewed prior to disclosure to Plaintiffs.

### III.    THE PARTIES SHOULD MEET WITH THE MAGISTRATE JUDGE TO DEVELOP A PRESERVATION AND ACCESS PLAN.

Megaupload respectfully submits that the parties should be directed to meet with the Magistrate Judge, and enlist Cogent's input if it is willing, to develop a plan that will preserve the Megaupload data on the Cogent servers in a manner ensuring data-integrity, as well as facilitating access, review, and disclosure, and minimizing costs.[3]  In that process, all the pertinent factors can be aired and considered, and a solution attained that fairly balances the competing interests.

For example, if the Court believes that some sort of extraordinary preservation is warranted, Megaupload suggests this approach:

1   At Plaintiffs' cost, appoint KPMG (who was previously involved with retrieving some of Megaupload's data from Carpathia) to retrieve the original server data from Cogent in the District of Columbia and make two "mirror" copies of the server data, in a forensic and non-destructive manner, and make one such copy immediately available to Megaupload's legal team in reviewable form for analysis;

2   Direct Megaupload's legal team to promptly review such server data during the extended stay period;

3   Upon completion of that review, direct Megaupload and Plaintiffs meet and confer on the following: the transfer of the server data, or portions thereof; the conditions for the transfer, if any; the appropriate stipulations and orders, such as a confidentiality order; and, without any waiver of rights, the production of data where there is no disagreement on discoverability;

4   KPMG maintains a complete forensic copy of the server data at issue and maintains the a chain of custody;

---

[3]   A similar meet-and-confer process mediated by the Magistrate Judge was ordered in the *Criminal Action* regarding the Carpathia Servers.  *United States v. Kim Dotcom, et al.*, No. 1:12-cr-00003-LO (E.D. Va. filed Jan. 5, 2012) (*Order* entered April 18, 2012, Dkt. No. 87).

5   If, after review, Megaupload decides to provide an entire mirror copy of the server data at issue to Plaintiffs' designated eDiscovery vendor, on the condition that no party is to access it without further Court order, then Megaupload be relieved from any further preservation obligation.

Other reasonable, negotiated arrangements also may be feasible.  However, other than requiring further meeting and conferring, ordering any other form of relief that allows immediate disclosure to Plaintiffs or to a "neutral" without prior review is improper and premature.

## CONCLUSION

Megaupload respectfully submits that the Court should extend the stay for an additional six months, and should deny Plaintiffs' request to "condition" the stay upon either allowing Plaintiffs to serve a subpoena or the entry of a blanket preservation order.  Instead, if the Court believes that some form of preservation order is warranted, then the Court should direct the parties to meet and confer with the Magistrate Judge to determine a reasonable solution.

Dated:  April 20, 2016                          Respectfully submitted,

                                                /s/ Craig C. Reilly
                                                Craig C. Reilly, Esq. (VSB # 20942)
                                                111 Oronoco Street
                                                Alexandria, Virginia 22314
                                                TEL (703) 549-5354
                                                FAX (703) 549-5355
                                                craig.reilly@ccreillylaw.com

Ira P. Rothken (*pro hac vice*)
Jared R. Smith (*pro hac vice*)
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net

*Counsel for Defendant Megaupload, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2016, the foregoing was filed and served electronically by

the Court's CM/ECF system upon all registered users:

Julie M. Carpenter
Kenneth L. Doroshow
Scott B. Wilkens
Erica L. Ross
JENNER & BLOCK LLP
1099 New York Ave., N.W.
Suite 900
Washington, D.C. 20001
*Counsel for Plaintiffs*

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
craig.reilly@ccreillylaw.com
*Counsel for Defendant Megaupload, Ltd.*